585 P.2d 237

ARIZONA COLLEGE OF THE BIBLE, INC., Employer Account No. 2061360, Appellant,

v.

DEPARTMENT OF ECONOMIC SECURITY, formerly known as Employment Security Commission of Arizona, Appellee.

No. 13621-PR.

Supreme Court of Arizona, In Banc.

May 31, 1978.

Rehearing Denied July 11, 1978.

Wortman & Harrell, P. C. by William A. Harrell, Phoenix, for appellant.

Bruce E. Babbitt, Former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by Frank Sagarino, Asst. Atty. Gen., Phoenix, for appellee.

CAMERON, Chief Justice.

This is a petition for review from a decision of the Court of Appeals which upheld a ruling of the trial court that the petitioner, Arizona College of the Bible, Inc., was required to make wage reports and contributions under the Employment Security Act of Arizona.

The only question before this court is whether the exemption portion of the Act applies to the petitioner.

The Arizona College of the Bible, Inc., is an Arizona corporation independent of any church, convention or association of churches. As its name implies, the school offers students an education in the Bible and the subjects offered relate to the Bible and Christian doctrine. The objectives of the Arizona College of the Bible are to prepare students for the ministry and to prepare those who will not become ministers to be better workers in their own church activities. The school offers six courses in Bible, two in Theology, six in Christian Education, three in Christian Missions, five in Church Music, two in Pastoral Studies, and one in Biblical Languages. General educational subjects such as English, Mathematics and Science are not of-

fered. Of the revenue received by the Arizona College of the Bible, 49% is derived from tuition, 8% from the sale of books and rentals, and 43% from individual and church donations of which most is from individuals rather than churches. The school is exempt from the payment of Federal Income Taxes pursuant to 26 U.S.C. 501(c)(3) and has been classified by the Internal Revenue Service as an educational institution pursuant to 26 U.S.C. 170(b)(1)(A)(ii). The school is exempt from payment of Federal Unemployment Taxes under 26 U.S.C. 3306(c)(8).

The Arizona College of the Bible contends that it is exempt from making wage reports and contributions under the Employment Security Act of Arizona since it does not have four or more non-exempt employees working for the school. A.R.S. § 23–615(6)(b)(ii). To arrive at this conclusion, two of Arizona College of the Bible's staff members, an administrator and an instructor who are licensed ministers, must be considered exempt as performing duties of a minister. A.R.S. § 23–615(6)(d) provides:

"(d) For purposes of this paragraph, the term 'employment' does not apply to service performed:

\* \* \* \* \* \*

"(ii) By a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry \* \* \*."

It is conceded the two ministers are "duly ordained, commissioned, or licensed minister[s]." The only question we have is whether the two ministers are acting "in the exercise of [their] ministry" when they are teaching or working for the Arizona College of the Bible. We believe they are.

A minister teaching a religious subject in a religious school can also be acting in the exercise of his ministry even though he is not conducting sacerdotal functions. It is not the fact that they are ministers that is controlling, but the fact that they are ministers teaching religious subjects. Teaching of the Bible and Christian doctrine is and has been an exercise of a person's ministry throughout antiquity. The great religious leaders of the world have been teachers as well as leaders in religious services. We believe that teaching at the Arizona College of the Bible is an exercise of one's ministry.

A similar argument can be made on behalf of a minister who chooses to exercise his ministry in the apparently secular function of an administrator of a religious educational institution. Even though the content of the work is not of the same religious nature as that of the teacher, both share the same ultimate goal, the religious purpose specifically articulated by the institution. It is unreasonable to say that a minister can only contribute his talents to such an institution in the classroom. In this situation, an administrator is also acting in the exercise of his ministry.

The Arizona College of the Bible also contends that it is exempt by the provisions of subsection (6)(d)(i) which reads:

"For purposes of this paragraph, the term 'employment' does not apply to service performed:

\* \* \* \* \* \*

"(i) In the employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches; \* \* \*."

The Court of Appeals reasoned that since the Arizona College of the Bible was not operated, supervised, controlled or principally supported by a church, or a convention or association of churches, it did not come under the provision of the statute. Since we have disposed of this matter as indicated above, we need not consider the applicability of this subsection of the statute at this time.

The opinion of the Court of Appeals, 119 Ariz. 542, 582 P.2d 188 (App.1977) is vacated, decision of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

HAYS and GORDON, JJ., concurring.

STRUCKMEYER, Vice Chief Justice, dissenting:

Arizona's Employment Security Act, by A.R.S. § 23–601, provides:

"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. * * * This can be provided by * * * the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment * * *."

Under the majority's opinion, if for any reason appellant corporation terminates its activities or if any of its employees should lose their jobs, they will be ineligible for unemployment compensation, A.R.S. § 23–771(6), and, therefore, appellant's employees are subjected to all the evils which the Act is designed to forestall. By their construction, the majority runs counter to the humanitarian purposes of the Act. Since no clear or convincing reason is given why the language of the Act should be interpreted contrary to the customary meaning of the words used by the Legislature, I dissent.

The key to the claimed exemption is found in the words of A.R.S. § 23–615(6)(d)(ii). There, it is provided that the Act does not apply to services performed by a duly ordained, commissioned or licensed minister of a church *"in the exercise of his ministry."* The words "in the exercise of his ministry" are dispositive of the issue here. They are simple, English language words, well understood by everyone. There can be no valid reason for not construing the statute exactly as written.

. The word "ministry" is defined by the Oxford English Dictionary, 1933 ed., as:

"3d The office of minister of the church, or of a religious body or congregation."

Palpably, the administrator and instructors of the appellant corporation, even though they are licensed ministers, are not in the exercise of a ministry; that is, exercising the office of a church or congregation. This corporation is neither a church, a religious body, nor a congregation. It is a school, teaching matters which bear upon the Christian religion. When a licensed minister is carrying on his job duties with the corporation, he is not ministering to a church or a congregation. No distortion or twisting of reasoning can deny the normal English usage of the statutory language.

I would agree with the majority that, "Teaching of the Bible and Christian doctrine is and has been an exercise of the person's ministry throughout antiquity." I would even say that teaching Christian doctrine is fundamental to a minister's existence. But the ministers here have no ministry. I reject such specious arguments, unsupported as they are by precedent either lexic or legal.

In *Rector of St. George's Church v. Morgan*, 88 Misc.Rep. 702, 152 N.Y.S. 497, J. Pierpont Morgan bequeathed to the estate of the Diocesan Convention of New York in trust the sum of $500,000 to pay over the income "for the support of the ministry" of St. George's Protestant Episcopal Church. The court said in construing the Morgan will:

"If it were necessary to define the term 'ministry' in order to sustain any other element in the case, there is abundant dictionary authority to hold that its usual meaning is 'ecclesiastical functions' or 'duties.' Murray's, 1908; Webster's, all editions; American Standard and other dictionaries."

Under the Arizona statute, a licensed minister must be exercising ecclesiastical functions or duties, which plainly is not being done when the minister is teaching or administrating the affairs of this privately incorporated school. A licensed minister when teaching subjects related to the Bible

and Christian doctrine could be performing an ecclesiastical function or duty. But the plain fact is that here appellant's employees are not carrying out their duties in the exercise of their ministry. They should be held subject to the Employment Security Act.

For the foregoing reasons, I agree with the majority of the Court of Appeals in their analysis of the case and dissent from the undesirable, non-humanitarian construction given to the Arizona Employment Security Act.

HOLOHAN, Justice, dissenting:

I concur in the foregoing dissent.