969 P.2d 649

OPEN PRIMARY ELECTIONS NOW, a political committee registered with the Arizona Secretary of State; and Grant Woods, Paul Johnson, Richard Mayol and Kathy Thompson, individuals, Plaintiffs-Appellants,

v.

Betsey BAYLESS, Secretary of State of Arizona, in her official capacity; Candace C. Owens, Coconino County Recorder; Linda Haught Ortega, Gila County Recorder; Helen Purcell, Maricopa County Recorder; and Patsy Jenney–Colon, Yavapai County Recorder, in their official capacities, Real Parties in Interest; Board Of Supervisors of Apache County; Board of Supervisors of Cochise County; Board of Supervisors of Coconino County; Board of supervisors of Gila County; Board of Supervisors of Graham County; Board of Supervisors of Greenlee County; Board of Supervisors of La Paz County; Board of Supervisors of Mohave County; Board of Supervisors of Maricopa County; Board of Supervisors of Navajo County; Board of Supervisors of Pima County; Board of Supervisors of Pinal County; Board of Supervisors of Santa Cruz County; Board of Supervisors of Yavapai County; And Board of Supervisors of Yuma County, Defendants–Appellees,

David Crete and Tom Head, Intervenor–
Defendants–Appellees.

No. CV–98–0412–AP.

Supreme Court of Arizona,
En Banc.

Dec. 10, 1998.

Brown & Bain, P.A. by Paul F. Eckstein, Timothy A. Nelson and Dan L. Bagatell, Phoenix, Attorneys for Appellants.

Gallagher & Kennedy, P.A. by John E. Lundin, Elliot Talenfeld and Jeffrey D. Gross, Phoenix, Attorneys for Appellee Betsey Bayless, Secretary of State.

Richard M. Romley, Maricopa County Attorney by Jill M. Kennedy, Deputy County Attorney, Phoenix, Attorneys for Maricopa County Board of Supervisors, Helen Purcell, Maricopa County Recorder, Candace C. Owens, Coconino County Recorder, and Coconino County Board of Supervisors.

Miller LaSota & Peters, PLC, by Donald M. Peters, Phoenix, Attorneys for David Crete and Tom Head.

Lisa T. Hauser, Scottsdale, Attorney for David Crete and Tom Head.

McGREGOR, Justice.

¶ 1   On August 17, 1998, the Secretary of State, relying in part upon her rejection of signatures obtained by a petition circulator whom the Gila County Recorder (County Recorder) had disqualified, declared that Proposition 106, the Open Primary Initiative, lacked sufficient valid signatures to permit placing the initiative on the November 1998 general election ballot.  Appellants attempted to challenge that decision by filing an action in superior court.  We hold that appellants' action was untimely because they failed to file it within the ten-day time limit defined by Arizona Revised Statutes (A.R.S.) § 19–121.03 (Supp.1998).

I.

¶ 2   On July 2, 1998, Open Primary Elections Now (O.P.E.N.) filed petitions in support of an initiative intended to amend the state constitution to permit electors to vote in any primary election, regardless of party affiliation.  As required by statute, the Secretary of State initiated the process required to determine whether sufficient valid signatures supported the petition.  See A.R.S. §§ 19–121.01 through 19–121.04.  Although the process for determining whether an initiative qualifies to appear on the ballot involves several steps, this appeal concerns only the requirement that county recorders validate the signatures of petition circulators and the effect of a county recorder's decision to disqualify a circulator.[1]  See A.R.S. § 19–121.02.

¶ 3   As part of the statutorily-mandated process for projecting the number of valid signatures submitted in support of initiative petitions, the Secretary of State sends to each county recorder a random sample of

---

1.  The Secretary of State invalidated more than 70,000 of the 230,000 submitted signatures for failure to comply with A.R.S. §§ 19–102.D, 19–112.C, 19–114.A, and 19–121.01.A. Although appellants initially challenged some of those decisions, they preserved none of the related arguments for this appeal.  Therefore, we consider only that part of the validation process related to the challenged actions by the Secretary of State and the Gila County Recorder.

signature sheets verified by circulators who claim to be qualified electors of that county. *See* A.R.S. § 19–121.01.C. If any circulator obtained signatures in counties other than his or her home county, the Secretary of State also sends the county recorder a randomly selected out-of-county signature sheet to compare with the circulator's voter registration card. *See id.*

¶ 4 In this case, the Secretary of State forwarded to the Gila County Recorder the affidavits of those circulators who indicated they were registered to vote in Gila County, including affidavits from a circulator named Kathy Thompson. When the County Recorder compared Ms. Thompson's affidavit signatures with that on her voter registration card, the signatures did not match.[2]

¶ 5 Acting pursuant to A.R.S. §§ 19–121.01 and 19–121.02, the County Recorder certified to the Secretary of State the number of circulators found not to be qualified electors in Gila County and therefore ineligible to act as circulators. The County Recorder's certification disqualified Ms. Thompson as a circulator, as to petitions circulated both within and outside Gila County. Worksheet C, attached to the certification, identified Ms. Thompson as a circulator "found not to be [a] qualified elector[ ] during the time of circulating the petition and [ ] therefore ineligible to act as [a] circulator[ ]." The certification form explained that "[s]ignatures contained on petitions circulated by ineligible out of county circulators will be removed by the Secretary of State's office." A mailing certificate placed on the face of the certification indicated that the County Recorder mailed a copy of the document to the co-chairs of the political committee supporting the petition on July 31, 1998. The Secretary of State received the certification on August 3, 1998.

¶ 6 Relying upon the County Recorder's certification, the Secretary of State rejected 1,563 signatures obtained by Ms. Thompson outside Gila County. When the Secretary of State combined that number with the signatures rejected on other grounds, the remaining valid signatures fell below the minimum threshold established by A.R.S. § 19–121.04.D.[3] The Secretary of State therefore rejected the initiative on August 17, 1998.

¶ 7 Appellants filed this action against the Secretary of State and County Recorder on August 21, 1998, raising several issues.[4] Intervenors, arguing that appellants' action was untimely, moved for summary judgment on September 3, 1998. The trial judge determined that "[a]ny claims concerning the certifications made by county recorders, and consequential subtraction from the total number of eligible signatures, are barred because they were not challenged within ten days of the receipt thereof by the secretary of state, pursuant to A.R.S. § 19–121.03(B)." Finding no just reason for delay, the judge entered judgment in favor of the Secretary of State and County Recorder. Appellants timely appealed.

¶ 8 We accepted this matter on direct appeal. *See* Ariz. Const. art. 6, § 5(3) and A.R.S. § 19–121.03.B. Following oral argument, we entered an order affirming the trial court's judgment. This opinion explains our order.

---

2. In an affidavit filed in the trial court, Ms. Thompson averred that, for personal reasons, she decided to change her signature and experimented with various signatures, which differed significantly from that on her voter registration card, during the time she circulated and signed petitions.

3. The Secretary of State must reject a petition if either the projected number of valid signatures from the random sample or the "actual number of signatures on the remaining sheets after any [ ] subtraction … or after certification" falls below "ninety-five per cent of the minimum number required by the constitution." A.R.S. § 19–121.04.D.

4. Appellants initially asked the trial court to determine whether petition circulators could complete the paid/volunteer check-off box after the signed petitions had been submitted to the Secretary of State in accordance with A.R.S. § 19–102.C and .D, and raised various state and federal constitutional challenges. Appellants abandoned those arguments in this appeal. Because appellants do not assert their constitutional arguments on appeal and because we agree with the trial court that this action is time-barred, we do not consider the constitutionality of the statutes involved.

## II.

¶ 9 Arizona's election statutes direct that, to challenge a county recorder's certification, a citizen must file an action in the superior court within ten days after the Secretary of State receives the certification. *See* A.R.S. § 19–121.03. Appellants, conceding they did not file this action within ten days after the Secretary of State received the certification that disqualified Ms. Thompson, argue their challenge actually is not to the certification. Rather, they argue, on August 17, 1998, the Secretary of State independently determined that Ms. Thompson was not an eligible circulator, and it is that independent determination that they challenge. Because election contests are statutory proceedings, we evaluate appellants' argument by considering the applicable statutory scheme. We resolve questions of law involving statutory construction *de novo. See Canon School Dist. v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

¶ 10 The plain language of the election statutes provides no support for appellants' position. Responsibility for determining whether the signature of a petition circulator corresponds with the circulator's voter registration signature rests solely with the county recorders. *See* A.R.S. § 19–121.02. Once a county recorder disqualifies a circulator, the county recorder must certify to the Secretary of State the name of the disqualified circulator. *See* A.R.S. § 19–121.02.C.4. The statutory scheme then mandates that the Secretary of State "determine the total number of valid signatures by subtracting from the total number of eligible signatures ... [a]ll signatures obtained by unqualified circulators...." A.R.S. § 19–121.04.A.1. The legislature gave the Secretary of State no discretion on this point: she must subtract those signatures obtained by a circulator whom a county recorder disqualifies. The County Recorder's July 31, 1998 certification disqualifying Ms. Thompson, therefore, determined that signatures obtained by her could not be counted by the Secretary of State. If any error occurred, it occurred when the County Recorder disqualified Ms. Thompson, not when the Secretary of State acted in compliance with the statutory mandate. Appellants could have challenged the County Recorder's certification, but they were required to utilize the procedure provided by the Legislature and file their action within the ten-day limit mandated by A.R.S. § 19–121.03.

¶ 11 Appellants' argument that enforcing the ten-day limit for challenging the County Recorder's certification effectively left them without a remedy is puzzling. Had appellants filed a timely action, they would have received full opportunity to present evidence to the trial court that Ms. Thompson had in fact signed the petitions she circulated, although her petition signatures did not match that on her voter registration card. Appellants lost an opportunity to make that showing, not because the trial court enforced statutory requirements, but because appellants failed to invoke statutory procedures in a timely manner. As this Court noted in a similar situation, "[t]he challengers placed themselves at risk by not filing their challenge to the [county recorder's certification] within the ten days provided by statute." *Pointe Resorts, Inc. v. Culbertson,* 158 Ariz. 137, 144, 761 P.2d 1041, 1048 (1988).

¶ 12 Appellants' argument that they could not have understood that the County Recorder's certification would result in disqualification by the Secretary of State of all non-Gila County signatures verified by Ms. Thompson is unpersuasive. The statutory language, discussed above, clearly directs the Secretary of State to subtract such signatures. Moreover, the certification itself, a copy of which the County Recorder mailed to the co-chairs of O.P.E.N., expressly stated that the Secretary of State would remove signatures on petitions circulated by ineligible out-of-county circulators. Both the statute and the certification provided ample notice to appellants of the significance of the County Recorder's certification.

## III.

¶ 13 Appellants next argue that even if their claim against the County Recorder is time-barred, the State is estopped from asserting that defense to their action. The factual basis for their argument relies

upon alleged representations by the County Recorder to Ms. Thompson. According to appellants, after learning on August 12, 1998 that the County Recorder had disqualified her, Ms. Thompson orally informed the County Recorder that she had consciously modified her signature during the time she collected petition signatures. On August 13, Ms. Thompson submitted signature samples to the County Recorder who, she alleges, had told her the petitions would be counted if she satisfied the County Recorder of the validity of her signatures. Taking those facts as true, we find insufficient basis for applying the doctrine of equitable estoppel.

¶ 14 To assert equitable estoppel against the State, a party first must show that the State performed an affirmative act, inconsistent with a claim later relied upon, with "some considerable degree of formalism under the circumstances.... It is rare that satisfactory evidence of an absolute, unequivocal, and formal state action will be found unless it is in writing." *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 577, 959 P.2d 1256, 1268 (1998). Even under the facts as alleged by appellants, Ms. Thompson and the County Recorder never reduced the alleged agreement to writing, and no degree of formality characterized the purported agreement. We cannot find the requisite formality to estop the State from rejecting the Thompson petitions.

¶ 15 The party asserting equitable estoppel also must demonstrate its actual and reasonable reliance upon the State's act. A party reasonably relies if it "acted in good faith by providing the state with correct information and neither knew nor was put on notice that the state's position was erroneous." *Id.* ( citing *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 60, 730 P.2d 235, 237 (1986)). The facts as alleged also fail to supply this element. Neither appellants nor Ms. Thompson could reasonably have relied upon the County Recorder's purported offer to reconsider her disqualification of Ms. Thompson as a circulator. No statute even suggests that a county recorder unilaterally can "recall" and revise a certification already submitted to the Secretary of State. Any alleged reliance by appellants or Ms. Thompson was unreasonable as a matter of law.

IV.

¶ 16 We conclude that the trial court correctly dismissed this action as time-barred and therefore affirm the judgment of the trial court.

ZLAKET, C.J., and JONES, V.C.J., FELDMAN, and MARTONE, JJ., concur.