18 P.3d 1245

**Beulah LAWRENCE, a citizen and qualified elector of the City of Mesa, Hassan A. Mirza, a citizen and qualified elector of the City of Mesa, DMB Circle Road Partners, an Arizona general partnership, Talley Defense Systems, Inc., a Delaware corporation licensed to and conducting business within the State of Arizona, and Wal–Mart Stores, Inc., a Delaware corporation licensed to and conducting business within the State of Arizona, Plaintiffs–Appellants,**

v.

**Barbara JONES, as the Clerk of the City of Mesa, Defendant–Appellee,**

**Mesa Neighborhood Alliance, a registered political committee, Real Party in Interest–Appellee.**

No. 1 CA–CV 00–0301.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 20, 2001.

Review Denied May 23, 2001.

Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, by Gary L. Birnbaum, Michael S. Rubin, James T. Braselton, Attorneys for Plaintiffs–Appellants, DMB Circle Road Partners and Talley Defense Systems, Inc.

Meyers, Taber & Meyers, P.C., by Lisa T. Hauser, Phoenix, Attorneys for Plaintiffs–Appellants, Beulah Lawrence, Hassan A. Mirza and Wal–Mart Stores, Inc.

Mesa City Attorney, by Neal J. Beets, Mesa, Attorneys for Defendant–Appellee.

Morrill & Aronson, P.L.C., by Martin A. Aronson, John T. Moshier, John C. Doney, Phoenix, Attorneys for Real Party in Interest–Appellee.

## OPINION

VOSS, Presiding Judge.

¶ 1 Plaintiffs appeal from the trial court's denial of their challenge to a Mesa zoning referendum and from denial of their motion for new trial and to amend the judgment. Plaintiffs sought to compel the Clerk of the City of Mesa to disqualify invalid signatures on Referendum RF00–2, which attempted to overturn a zoning change from M–2 (general industrial use) to C–2 (limited commercial use) as enacted by Mesa Ordinance No. 3744. This appeal raises two issues: (1) whether attachment of a zoning map to the petition

was sufficient to meet the requirement that a "legal description" of the subject property be included in the petition, pursuant to Ariz. Rev.Stat. ("A.R.S.") section 19–121(E); and (2) whether petition signatures obtained by petition circulators who were not residents of Mesa were valid.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 We set forth the undisputed facts directly from the trial court's ruling because they are well-stated and supported by the record:

On or about October 25, 1999, Plaintiff DMB/Circle Road Partners filed an application for re-zoning certain property located in the City of Mesa from M–2 to C–2 to allow for the development of a shopping center. That zoning change was approved by the Mesa City Council on or about February 7, 2000, by Ordinance No. 3744. Thereafter, the Mesa Neighborhood Alliance was formed and circulated Referendum Petition No. RF00–2 against the council's adoption of Mesa City Ordinance No. 3744.

In order for a referendum to be placed on a Mesa election ballot, 2,729 qualified signatures are required. On or about March 10, 2000, over 4,000 signatures for Referendum Petition No. RF00–2 were filed with the Mesa City Clerk, of which 3,070 signatures were found eligible on April 4, 2000. On or about April 3, 2000, the Mesa City Clerk advised the mayor and city council that Referendum Petition RF00–2 contained sufficient valid signatures to be placed on the ballot and that the initiative would appear on the ballot March 12, 2002, unless the council determined to place it on a special election ballot.

The petitions that were circulated by the Mesa Neighborhood Alliance had attached a copy of Ordinance No. 3744, which included a copy of the "Official Supplementary Zoning Map Amending the City of Mesa Zoning Map." This Official Supplementary Zoning Map shows the property affected by the zoning change as a shaded area at the intersection of Greenfield and McKel-

lips Road. The map also references the zoning petition number, the change to C–2 and Ordinance No. 3744, together with the description 35.3[+/-] acres.

Five individuals who were residents of Arizona but not of Maricopa County, and 39 individuals who were residents of Maricopa County but not the City of Mesa circulated petitions and gathered 3,448 signatures of the total number filed. Defendants admit that unless the petitions circulated by non-Mesa residents are counted, there were insufficient signatures for this referendum to be placed on the Mesa City ballot.

¶ 3 On April 14, 2000, plaintiffs filed a special action in superior court, seeking to compel the Mesa City Clerk to disqualify invalid signatures on the referendum petition on two grounds: first, because the attachment of the zoning map to the petition was insufficient to meet the requirement of a "legal description" of the property pursuant to A.R.S. section 19–121(E); and second, because petition signatures obtained by nonresidents of Mesa were invalid pursuant to A.R.S. sections 19–114, 16–101, and Mesa City Code section 1–8–2(C).

¶ 4 After an evidentiary hearing, the trial court accepted special action jurisdiction but denied relief, determining on the merits that attaching the zoning map met the requirement of "includ[ing] a legal description of the property," and that the petition circulators were not required to be Mesa residents, pursuant to the recent decision of the United States Supreme Court in *Buckley v. American Constitutional Law Foundation Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999). After denial of their motions for a new trial and to amend the judgment, plaintiffs timely appealed.

## DISCUSSION

*1. Zoning Map as a "Legal Description"*

¶ 5 A zoning referendum petition must include, among other things, the following:

In the case of zoning measures the measure *shall also include a legal description of the property* and any amendments

made to the ordinance by the legislative body.

A.R.S. § 19–121(E)(emphasis added). In ruling that the inclusion of the zoning map met this requirement, the trial court concluded:

> The Court further finds that the Official Supplementary Zoning Map is a sufficient legal description for purposes of the referendum petition. This is the official legal description utilized by the City of Mesa for purposes of zoning. The evidence was undisputed that the City of Mesa has an official zoning map and zoning changes are made by the adoption of an ordinance and an official supplementary zoning map showing the change. To be consistent with the practice in Mesa for legal descriptions for zoning, the official Mesa zoning map is the appropriate legal description to be attached to the referendum petitions seeking referendum on zoning changes. In addition, the attachment of the Official Supplementary Zoning Map contains a sufficient description of the property for readers of the petition to understand its location and size, which the Court concludes is the intent of the statute's requirement that a legal description be attached.

> Plaintiffs contend that a legal description describing in metes and bounds, by section and township, or by reference to a lot, block, tract, or parcel in a recorded subdivision plat is the type of legal description required. Plaintiffs point out that there are numerous references in Arizona [R]evised [S]tatutes to legal descriptions and specific requirements for what constitutes a sufficient legal description in many circumstances. The purpose and intent of a legal description according to Black's Law Dictionary (5th Ed.) is that it be "complete enough that a particular parcel of land can be located and identified." The attachment of the Official Supplementary Zoning Map accomplishes this purpose and intent. It provides signers of the referendum petition with the specific location of the property in reference to its location in the City of Mesa and with reference to the official zoning map of the City of Mesa. The Court finds that the attachment of the Official Supplementary Zoning Map is a

legal description within the meaning of A.R.S. § 19–121(E).

¶ 6 Because our review of this ruling involves an issue of statutory interpretation, it is a question of law that we review *de novo*. *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, 46, 969 P.2d 649, 652 (1998).

¶ 7 We are faced with two separate legal standards in this case. First, the rule is well established in Arizona law that the constitutional right to referendum is to be broadly construed. *See* A.R.S. § 19–111 (Historical and Statutory Notes, Laws 1989, ch. 10, § 1). Our legislature has expressly directed:

> If there is any doubt about requirements of ordinances, charters, statutes or the constitution concerning only the form and manner in which the power of an initiative or referendum should be exercised, these requirements shall be broadly construed, and the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions of the initiated or referred measure, unless the ordinance, charter, statute or constitution expressly and explicitly makes any fatal departure from the terms of the law.

*Id.* Our courts have also consistently recognized "Arizona's strong public policy favoring the initiative and referendum." *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991).

¶ 8 On the other hand, our courts have consistently held that referendum petitions must "comply strictly with any applicable statutory requirements." *Sherrill v. City of Peoria*, 189 Ariz. 537, 540, 943 P.2d 1215, 1218 (1997) (quoting *Western Devcor*, 168 Ariz. at 429, 814 P.2d at 770) (citing *Cottonwood Dev. v. Foothills Area Coalition of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982)). In *Sherrill*, our supreme court concluded

> that section 19–121(E) establishes a bright-line rule that specifies three items to be attached to each petition: (1) the adopted ordinance or resolution; (2) *a legal description of the property;* and (3) amend-

ments, if any, made to the ordinance. The statute on its face requires no less and no more.

189 Ariz. at 540, 943 P.2d at 1218.

¶ 9 In harmonizing these two standards, we believe that we may not excuse the failure to include a "legal description of the property" because it is strictly required by the provisions of A.R.S. section 19–121(E). However, we must broadly construe the definition of that requirement in determining whether compliance was achieved.[1]

¶ 10 The statutory scheme regarding referendum petitions does not contain a definition of a "legal description of the property." That term is, however, described in various other provisions of our statutes.[2] For example, in Title 33, regarding descriptions of trust property, six methods of providing "the legal description of trust property" are set forth:

1. By the use of lot, block, tract or parcel as set forth within a recorded subdivision plat.

2. By the use of a metes and bounds or course and distance survey.

3. By the use of the governmental rectangular survey system with specific identification of the location within any section or sections, tract or tracts, of a township and range.

4. By the use of the name of an unpatented mining claim together with the recording data of the location notice thereof recorded in the county recorder's office in which the claim is located.

5. By the use of the name of a patented mining claim together with the mineral survey number and the recording data of the patent to such mining claim.

6. By the use of a homestead entry survey number.

A.R.S. § 33–802(A). These are not, however, the exclusive provisions relating to "legal descriptions;" for example, regarding the incorporation by reference of documents filed with the office of the County Recorder, Title 11 provides:

If *a legal description sufficient to determine the physical location of real property* has been recorded, a reference by record location to the instrument containing the description is a sufficient description of the real estate. The reference may be made to maps or plats, surveys, deeds or any other recorded instrument but must contain language indicating that only the legal description is to be incorporated in the subsequent instrument.

A.R.S. § 11–482(C)(emphasis added). The intent of the various statutes describing or requiring a "legal description" of property is to include information sufficient to give the reader of the document adequate notice about where a particular property can be located. *See, e.g., Ten Z's Inc. v. Perry,* 166 Ariz. 203, 204, 801 P.2d 438, 439 (App.1990) ("The crucial question to be answered is whether a member of the public who saw the notice in question would be able, without difficulty, to determine what property was being noticed for sale.").

¶ 11 In this case, the "legal description," as would be narrowly defined by plaintiffs, and as was listed on the Planning and Zoning Board Application, is as follows:

The Northwest quarter of the Northwest quarter of Section 10, Township 1 North, Range 6 East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona;

---

1. Plaintiffs contend that we may not interpret the meaning of "legal description of the property" as used in A.R.S. section 19–121(E) because our supreme court has held A.R.S. section 19–121(E) to be "clear and unambiguous." *See Sherrill,* 189 Ariz. at 541, 943 P.2d at 1219. *Sherrill* did not, however, address the meaning of "legal description," and held only that it was erroneous for the court of appeals to require more to be included in a referendum petition than the referendum statutes actually require. We therefore do not feel constrained by *Sherrill* from deciding this issue.

2. Indeed, plaintiffs have provided us with an appendix in which 82 statutes are listed which purport to refer to "legal descriptions." We do not set forth these various provisions in their entirety, for it is undisputed that none of them conclusively apply to A.R.S. section 19–121(E). Rather, we approach the definition of "legal description" in a manner confined to the specific circumstances and intent of A.R.S. section 19–121(E).

EXCEPT the South 150 feet of the East 130 feet; and

EXCEPT the South 10 feet; and

EXCEPT the East 30 feet; and

EXCEPT the North 55 feet; and

EXCEPT the West 55 feet; and

EXCEPT all uranium, thorium and all other material determined pursuant to Section (b)(1) of the Atomic Energy Act of 1946 (60 Stat. 761) to be peculiarly essential to the production of fissionable material, contained in whatever concentration, in deposits in the land, as reserved in Instrument of Transfer recorded in Docket 270, Page 90, records of Maricopa County, Arizona. Described property begin in and forming a part of the City of Mesa, Arizona and comprising an area of 1,535,239 square feet of 35.2442 acres more or less.

¶ 12 This technical narrative does not give the average reader of a referendum petition clear notice of the location of the property. In contrast, the zoning map indicated that the property is located at the northeast corner of the intersection of North Greenfield Road and East McKellips Road in Mesa, Arizona, and exhibited a shaded area, showing bordering streets, that comprises 35.3[+/-] acres, to be zoned C–2 by "Ord. # 3744." The map also referenced the zoning case number, Z99–119, and contained the further notation that "the attached zoning changes were approved by the Mesa City Council on February 7, 2000 by Ordinance # 3744. If you have any questions concerning these changes, contact the City of Mesa Community Development Department at 480–644–2385." The map was signed by both the Mayor and the City Clerk, and contained the City of Mesa Corporate Seal.

¶ 13 At the evidentiary hearing in the trial court, Frank Mizner, the Planning Director for the City of Mesa, testified that the city maintains an "Official Zoning Map" that il-

lustrates all zoning districts within the city, along with landmarks, which is "utilized to provide zoning information to the public," and which constitutes the only "official legally binding document in the city that shows zoning." It does not describe zoning parcels by either metes and bounds descriptions or assessor parcel numbers. Although zoning applications often contain a metes and bounds description based on townships and ranges, some zoning applications contain only a "pictorial depiction of the property in the form of a map," or merely a simple site plan. The Planning Department converts all those types of descriptions into a "pictorial legal description in the form of a map showing the boundaries of the property, reference to adjacent or nearby streets, size of the property," which is then used during the public hearing process, in the City Council, and in legal publications. After the City Council votes on a zoning amendment, a Supplementary Official Zoning Map is created that is attached to the ordinance, containing additional information about the ordinance, the date of the amendment, and the zoning change affected. This supplemental map is considered by the City to be a legally binding document as well as "the official legal description" for the zoning of the subject parcel.[3] Based on his experience, the Planning Director opined that the public would find the map more useful than a metes and bounds description "because it physically relates to the neighborhood," whereas a detailed technical description refers to "meridians and baselines and sections that the normal citizen probably wouldn't understand."

¶ 14 In responding to plaintiffs' initial challenge to the petition in the City Clerk's office, the Mesa City Attorney gave the following reasons for instructing the City Clerk to accept the petitions containing the zoning map as valid:

> The Code also provides, however, that the Zoning Map is not intended to be used as a "precise legal narrative" of zoning district boundaries. Mesa City Code § 11–2–2(B). We do not see this restriction as a barrier to our holding that a "precise legal narrative" is not the sole method of attaching a "legal description" to a zoning referendum petition within the meaning of A.R.S. section 19–121(E).

---

**3.** Mesa City Code section 11–2–2(A) provides, in relevant part:

> The locations and boundaries of zoning districts are established on the City of Mesa Zoning Map, dated and signed by the Mayor and City Clerk, which map accompanies and is hereby declared a part of this Zoning Ordinance.

[Y]ou narrowly interpret "legal description" as limited to a word or narrative form of land description-such as a metes and bounds description or a description by assessor parcel number.

I do not interpret the statutory phrase "legal description" so narrowly. Particularly in the context of a referendum, I believe a sufficiently detailed map, similar to the one attached to Mesa's zoning ordinance and the citizen's referendum in this case, more than meets the statutory requirement for a legal description of the property in question.

. . .

Here, the controlling statute requires that potential petition signers have available to them a legal description of the property that is the subject of the rezoning and referendum. The Legislature did not specify a particular type of legal description—although the Legislature was free to do so if it chose.

So, the critical statutory construction question becomes one of legislative intent: "Why, in the first place, did the Legislature create a requirement for a legal description of the property subject to a zoning referendum?"

By requiring a legal description of the property ..., the manifest intent of the Legislature was to make sure that petition signers had an opportunity to learn about the parcel of land being rezoned. Location, location, location is self-evidently critical to land use and referendum decisions.

. . .

The map Mesa attaches to all its enacted zoning ordinances fulfills all of these manifest legislative purposes, as well as or better than a technical metes and bounds or other narrative form of legal description. Better than a narrative description, a map provides a literal picture of the area being rezoned as well as the vicinity around the land being rezoned.

A picture is worth a thousand words, especially when those words—as in a metes and bounds form of legal description or an assessor parcel number form of legal description—are legalese, real estate-ese or otherwise technical words that are foreign to most potential petition signers. Unless potential petition signers happen to specialize in land surveying, a narrative legal description is not only uninformative, it is decidedly unhelpful in fulfilling the manifest legislative intent of providing useful and meaningful information to potential petition signers.

. . .

Note that the Mesa City Code, a compilation of laws, not only allows but requires that each zoning case be accompanied, not by a technical word description of the property to be rezoned, but by a "map" that shows the property as well as the immediately surrounding vicinity. Mesa City Code § 11-2-2.

Thus, there is no legal reason under A.R.S. § 19-121(E) to reject the map already *authorized by law* [thereby "legal"] that *describes* the property to be rezoned [thereby "description"]. A legal description in the form of a Code-required map suffices under the common dictionary meaning of the words "legal description."

■ ¶ 15 We agree with this reasoning. We acknowledge that a "technical, narrative form of legal description" might necessarily be required in a variety of other contexts, such as a real estate dispute to determine boundary or ownership interests by reference to records maintained by the County Recorder, or in a taxation dispute involving comparison of records maintained by the County Assessor, or in an attempt to create a lien against specific property. *See, e.g., Bryan v. Nelson*, 180 Ariz. 366, 884 P.2d 252 (App.1994) (holding street address is insufficient "legal description" to create a lien by dissolution decree pursuant to A.R.S. section 25-318(A)). However, we find nothing inherent in the context of A.R.S. section 19-121(E) that requires, "legal description" to be interpreted to mean a hypertechnical recitation of property boundaries that would have no meaning or relevance to the citizens considering the petition. Rather, we believe that if the legislature had wanted to include such a narrowly constructed definition of "legal description," it would have included it in Title

19 referendum provisions as it has done in other areas of the law. We have not found, nor have plaintiffs cited, any Arizona case mandating that we give the term such a narrow, technical definition.

¶ 16 Plaintiffs do not dispute that the zoning map utilized here is "official," as authorized by the Mesa City Code, nor do they dispute that it "establishes the location and boundaries of the property for zoning purposes." Furthermore, they do not contend that anyone who signed the petition was misled. Under these circumstances, we agree with the trial court that, in the context of referendum petitions, the requirement of A.R.S. section 19–121(E), that a "legal description of the property" be attached to the petition, broadly construed to effect the intent of that requirement, was met in this case by inclusion of the particular zoning map authorized by the Mesa City Code and attached to the petition. We therefore affirm the trial court's ruling on this ground.

### 2. Non-Resident Petition Circulators

¶ 17 Plaintiffs also challenge the trial court's conclusion that signatures collected by petition circulators who were not residents of Mesa were valid. In so ruling, the trial court relied on the decision of the United States Supreme Court in *Buckley v. American Constitutional Law Foundation Inc.,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), and concluded that "circulators of referendum petitions must only be qualified to register to vote in the State of Arizona." It is undisputed that the petition circulators in this case met this requirement.

¶ 18 On appeal, plaintiffs argue that this ruling is erroneous as a matter of law, and that only Mesa residents are qualified to circulate a referendum petition involving a Mesa zoning ordinance. Plaintiffs base this argument on the provisions of A.R.S. sections 19–114(A) and 16–101, and on Mesa City Code section 1–8–2.

¶ 19 We have recently addressed the issue whether any Arizona statutory authority precludes the circulation of county referenda petitions by nonresidents of the county who are otherwise qualified to register to vote in Arizona. *See KZPZ Broadcasting, Inc., v.*

*Black Canyon City Concerned Citizens,* 199 Ariz. 30, 13 P.3d 772 (App.2000). In *KZPZ,* applying the principles of *Buckley,* we concluded that "the statutory scheme could not constitutionally include a local residency requirement for referendum petition circulators." 199 Ariz. at 38, ¶ 27, 13 P.3d at 779. We therefore construed the statutory provisions in a manner consistent with *Buckley,* noting that the Arizona Legislature had amended the relevant provisions after *Buckley* to conform to that decision. We need not engage in that analysis again; we find the analysis in *KZPZ* dispositive of the statutory construction issue raised here.

¶ 20 This case, however, also involved the application of a City Code provision. Mesa City Code section 1–8–2 provides:

(B) All circulators of initiative or referenda petitions proposing to change the Mesa City Charter or Mesa City Code shall be qualified Mesa electors, as defined in Section 1–8–1 above.*

(C) In evaluating petitions presented for signature verification, the City Clerk shall not count or consider signatures on an initiative, referendum, or nomination petition under this Section that are circulated by persons other than a Mesa qualified elector, as defined in Section 1–8–1 above.

The asterisk in section B refers to the following footnote:

Effective August 6, 1999, pursuant to Titles 16 and 19, circulators of initiative, referendum, nomination, and recall petitions must be qualified to register to vote in this State (HB 2656, *Buckley v. American Constitutional Law Foundation* ).

(Emphasis added.) In ruling on this issue, the trial court noted:

Mesa City Ordinance 1–8–2 requires that circulators of initiative or referenda petitions proposing to change the Mesa City Charter or Mesa City code shall be qualified Mesa electors. An asterisk and footnote have been added to 1–8–2 to the effect that pursuant to House Bill 2656 and *Buckley v. American Constitutional Law Foundation,* circulators of initiative, referendum, nomination and recall petitions must be qualified to vote in Arizona. Al-

though Mesa has not deleted this ordinance from the city code, it is no longer enforceable in light of HB 2656 and *Buckley v. American Constitutional Law Foundation.*

¶ 21 We agree with this legal conclusion. Although the Mesa City Code does not require the same statutory interpretation in which we engaged in *KZPZ*, the constitutional principles we analyzed in that case apply equally here. Assuming without deciding that a state residency requirement for petition circulators would be upheld after *Buckley*, we stated that,

> we do not see how the more significant restriction of county residency would survive strict scrutiny. The more local the residency restriction is made, the smaller the pool of available petition circulators becomes, and the more limited is political expression about proposed changes, with no corresponding heightened protection of the state's interests in the integrity of its elections.

*KZPZ*, 199 Ariz. at 38, ¶ 24, 13 P.3d at 779. In considering whether a locality had a compelling interest in preventing involvement in the referendum process by "political outsiders," we pointed out that the "grass roots support" interests are already protected by the requirements that only local residents can actually sign the petition and only local residents can actually vote in a local referendum election. *Id.* at ¶ 25. We were also "unwilling to say, as a general proposition, when local Arizona land use issues are involved, that only local residents have an interest in the outcome sufficient to entitle them to voice political expression through circulation of a referendum petition." *Id.* Therefore, we concluded, a local residency requirement imposed on referendum petition circulators would "run afoul of the First and Fourteenth Amendments under the principles set forth in *Buckley*." *KZPZ*, 199 Ariz. at 39, ¶ 27, 13 P.3d at 780.

¶ 22 We conclude, based on the above, that the trial court properly rejected plaintiffs' challenge to the validity of the referendum petitions based on the Mesa nonresidency of circulators who were otherwise qualified to register to vote in Arizona.

**CONCLUSION**

¶ 23 Based on the foregoing, we affirm the trial court's judgment.

CONCURRING: NOEL FIDEL, Judge, CECIL B. PATTERSON, JR., Judge.

