207 P.3d 702

**Sherry M. SKLAR, a qualified elector of the Town of Fountain Hills, Plaintiff/Appellee,**

v.

**TOWN OF FOUNTAIN HILLS; Beverly J. Bender; Jay Schlum; Dennis Contino; Cassie Hansen; Keith McMahan; Henry Leger; Mike Archambault; Ginny Dickey, Defendants/Appellees.**

**Save Our Small Town in Support of 2008–RF–001–01 and Save Our Small Town in Support of 2008–RF–002–02, Intervenors/Appellants.**

**No. 1 CA–CV 08–0519 EL.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 25, 2008.

Review Denied Dec. 4, 2008 and April 20, 2009.

Gammage & Burnham PLC By Lisa T. Hauser, Gregory J. Gnepper, Heather J. Boysel, Phoenix, Attorneys for Intervenors/Appellants.

Shugart Thomson & Kilroy, PC By Thomas K. Irvine, Kelly J. Flood, Natalia A. Garrett, Phoenix, Attorneys for Plaintiff/Appellee.

WINTHROP, Presiding Judge.

¶ 1 In its referendum petitions seeking to invalidate a town's rezoning and development ordinances, did the voter-based sponsoring group fail to comply with the statutory mandate that the petitions identify the principal provisions of the challenged governmental acts? The superior court found the subject referendum petitions lacking in this regard and, in turn, misleading to potential petition signers. In this expedited appeal, we examine *de novo* the contested language in the petitions and find an inherent failure to comply with the statutory mandate. As more fully discussed below, we affirm the order of the superior court enjoining placement of the subject referendum petitions on any general or special election ballot.

## BACKGROUND

¶ 2 In 2005 and 2006, the Town of Fountain Hills annexed and approved zoning for a 1276–acre parcel of land formerly known as the "State Trust Land." The zoning at that time permitted 1750 residential units on such parcels. On March 15, 2007, the Fountain Hills Investment Company, L.L.C., ("Developer") purchased the property at a public auction. Subsequently, Developer filed an application with the Town of Fountain Hills

to amend the Town's General Plan[1] and to rezone the 1276–acre parcel.[2] On May 15, 2008, at a public hearing, the Town Council of Fountain Hills approved both measures.[3]

¶3 On May 19, 2008, "Save Our Small Town" ("SOST"), a ballot measure committee, filed its Statement of Organization and applied for referendum serial numbers to refer Resolution No.2008–25 and Ordinance No. 08–12 to a ballot. SOST gathered signatures on its petitions and, on June 20, 2008, the Town Clerk certified that each referendum petition contained enough signatures to put these measures on hold pending a vote of the electors of the Town of Fountain Hills.

¶4 In June, Sherry Sklar ("Sklar"), a qualified elector in the Town, filed a complaint in the superior court against the Town of Fountain Hills. Sklar sought to invalidate both referenda and to enjoin the Town from placing either measure on the ballot. Sklar also requested that the court order the Town to appear and show cause why the Town should not be enjoined from placing the referendum on the ballot. SOST intervened as a defendant.

¶5 Sklar and SOST filed motions for summary judgment. Sklar argued that the court must strictly construe the requirements of Arizona Revised Statutes ("A.R.S.") section 19–101(A), citing *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 814 P.2d 767 (1991), and that SOST's petitions were invalid because they were inaccurate, misleading, and did not contain descriptions of the principal provisions of the matters to be referred. Conversely, SOST argued that the court must broadly construe § 19–101(A), citing *Sherrill v. City of Peoria*, 189 Ariz. 537, 943 P.2d 1215 (1997), and that the descriptions on the referendum petitions were neither defective nor misleading. The superior court agreed with Sklar and enjoined the Town from placing the referendum on the ballot. Specifically, the superior court ruled that it

must strictly construe § 19–101(A) and that the 100–word referendum descriptions provided by SOST in its signature petitions did not set forth the principal provisions of the General Plan Amendment and the corresponding ordinance as required by the statute. *See Western Devcor, Inc.*, 168 Ariz. at 428–29, 814 P.2d at 769–70. The court therefore granted summary judgment in favor of Sklar. This timely expedited appeal followed.[4] We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003) and 19–122(C) (2002). *See also Perini Land & Dev. Co. v. Pima County*, 170 Ariz. 380, 382, 825 P.2d 1, 3 (1992) (instructing parties to file referendum appeals in the court of appeals).

## ANALYSIS

### Standard of Review

■ ¶6 SOST argues that the referendum petitions are valid because the petitions comply with the requirements of § 19–101(A). Because our review is limited to matters of statutory construction decided by the superior court, it is a question of law that we review *de novo*. *Open Primary Elections Now v. Bayless*, 193 Ariz. 43, 46, ¶9, 969 P.2d 649, 652 (1998).

¶7 In reviewing an order granting summary judgment, we must determine whether there is a genuine issue of disputed material fact and, if not, whether the superior court correctly applied the substantive law. *See In re Estate of Johnson*, 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). "In interpreting statutes, we look to the plain language as the most reliable indicator of meaning." *Powers v. Carpenter*, 203 Ariz. 116, 118, ¶9, 51 P.3d 338, 340 (2002); *Calik v. Kongable*, 195 Ariz. 496, 498, ¶10, 990 P.2d 1055, 1057 (1999). We will give effect to each sentence and word so that provisions are not rendered meaningless. *Bilke v. State*, 206 Ariz. 462, 464, ¶11,

---

1. Resolution No.2008–25.

2. Ordinance No. 08–12.

3. The Town Council at the same meeting also approved Resolution 2008–24, which authorized execution of a Development Agreement between the Town and Developer.

4. Because the deadline has passed for placing these measures on the ballot, the Town of Fountain Hills and Sklar filed motions to dismiss the appeal based on the doctrines of laches and mootness; however, both motions were denied. They reassert these arguments in their answering briefs, and we again reject them.

80 P.3d 269, 271 (2003); *State v. Superior Court (Kerr-McGee Corp.),* 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976). "With these principles in mind, we consider the text of 19-101(A) and the parties' arguments." *Comm. for Pres. of Established Neighborhoods v. Riffel,* 213 Ariz. 247, 250, ¶ 8, 141 P.3d 422, 425 (App.2006).

### General Principles Concerning Referendum

¶ 8 As a preliminary matter, we briefly restate some general principles concerning analysis of challenges to referendum petitions. First, we are well aware of and respect the citizens' constitutional right to challenge a government's legislative actions by referring a duly enacted measure to the ballot for a vote. Ariz. Const. art. 4, pt. 1, § 1; *Lawrence v. Jones,* 199 Ariz. 446, 449, ¶ 7, 18 P.3d 1245, 1248 (App.2001) (stating that "[o]ur courts have also consistently recognized 'Arizona's strong public policy favoring the initiative and referendum.'") (citing *Western Devcor, Inc.,* 168 Ariz. at 428, 814 P.2d at 769). That right is subject to reasonable statutory regulation, *see Cottonwood Development v. Foothills Area Coal. of Tucson, Inc.,* 134 Ariz. 46, 48, 653 P.2d 694, 696 (1982); accordingly, our legislature has, over the years, created and amended statutes governing the proper exercise of the right of referendum. *See generally,* A.R.S. § 19-101 et seq.

¶ 9 Our supreme court has consistently held that a referendum petition must "comply strictly with applicable constitutional and statutory provisions." *Sherrill,* 189 Ariz. at 540, 943 P.2d at 1218 (quoting *Western Devcor, Inc.,* 168 Ariz. at 429, 814 P.2d at 770 (citing *Cottonwood Dev.,* 134 Ariz. at 49, 653 P.2d at 697)). The reason for insisting on such strict, or "nearly perfect" compliance is that "referendum power allows [the] 'minority to hold up the effective date of legislation which may well represent the wishes of the majority.'" *Riffel,* 213 Ariz. at 249, ¶ 6, 141 P.3d at 424 (quoting *Western Devcor, Inc., supra,* 168 Ariz. at 428-29, 814 P.2d at 769-70). Likewise, the court in *Sherrill* cau-

tioned that courts must "resist the temptation to 'improve upon' or try to 'fix' otherwise clear statutory language in an effort to make it more useful or meaningful. Rather the responsibility to alter statutes that can be read only one way, as here, remains with the legislature." *Sherrill,* 189 Ariz. at 541, 943 P.2d at 1219.

¶ 10 At the same time, the Arizona legislature has expressly directed that

[t]he right of initiative and referendum shall be broadly construed. If there is doubt about requirements of ordinances, charters, statutes or the constitution concerning only the form and manner in which the power of an initiative or referendum should be exercised, these requirements shall be broadly construed, and the effect of a failure to comply with these requirements shall not destroy the presumption of validity of citizens' signatures, petitions of the initiated or referred measure, unless the ordinance, charter, statute or constitution expressly and explicitly makes any fatal departure from the terms of the law.

*Sherrill,* 189 Ariz. at 540-41, 943 P.2d at 1218-19, *quoting* from A.R.S. § 19-111 (Historical and Statutory Notes, Laws 1989, ch. 10, § 1).

¶ 11 In *Lawrence v. Jones,* this court attempted to harmonize the "broad construction" legislative directive found in § 19-111 with the existing case law mandating "strict construction." There, a landowner applied for and received approval to rezone his land. The landowner argued that the opponents' subsequent referendum petition was invalid because "the attachment of the zoning map to the petition was insufficient to meet the requirement of a 'legal description' of the property pursuant to A.R.S. section 19-121(E)." [5] *Lawrence,* 199 Ariz. at 448, ¶ 3, 18 P.3d at 1247. In analyzing the threshold issue, we stated that "[i]n harmonizing these two standards, we believe that we may not excuse the failure to include a 'legal description of the property' because it is strictly required by the [statute]. However, we must broadly construe the definition of that re-

---

**5.** Section 19-121(E) provides, among other things, that a referendum petition shall "include a legal description of the property and any amendments made to the ordinance by the legislative body."

quirement in determining whether compliance was achieved." *Id.* at 450, ¶ 9, 18 P.3d at 1249. Accordingly, we broadly construed the requirement that a referendum petition contain a "legal description" of the property and held that the inclusion of the zoning map satisfied the requirement. *Id.* at 452–53, ¶¶ 15–16, 18 P.3d at 1251–52. We reasoned that the map furthered the intent of the legislature—it assisted petition signers in learning about the parcel of land being rezoned. *Id.* at 452, ¶ 14, 18 P.3d at 1251.

### A.R.S. § 19–101(A)

¶ 12 We now turn to the specific question and statutory provision at issue in this appeal: whether SOST's descriptions of Resolution No.2008–25 and Ordinance No. 08–12 in its signature petitions complied with the requirement that a referendum description contain the principal provisions of the challenged measure. Section 19–101(A) provides in relevant part:

The following shall be the form for referring to the people by referendum petition a measure or item, section or part of a measure enacted by the legislature, or by the legislative body of an incorporated city, town or county:

Referendum Description

(*Insert a description of no more than one hundred words of the principal provisions of the measure sought to be referred.*)

Notice: This is only a description of the measure sought to be referred prepared by the sponsor of the measure. It may not include every provision contained in the measure. Before signing, make sure the title and text of the measure are attached. You have the right to read or examine the title and text before signing. (Emphasis added.)

¶ 13 We first examine the plain language of the statute and will ascribe the plain meaning to its language unless the context suggests otherwise. *Byers–Watts v. Parker,* 199 Ariz. 466, 469, ¶ 10, 18 P.3d 1265, 1268 (App.2001). Subsection (A) requires the petition to include a 100–word "description of

... the *principal* provisions of the measure sought to be referred." A.R.S. § 19–101(A) (emphasis added). The plain meaning of "principal" includes "most important, consequential, or influential," "chief," and "a matter or thing of primary importance." *Merriam–Webster's Collegiate Dictionary* 987 (11th ed. 2007); *State v. Wise,* 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) (explaining courts may reference dictionaries to glean ordinary meaning of words). *See also Ariz. Coll. of the Bible, Inc. v. Dep't of Econ. Sec.,* 119 Ariz. 542, 544, 582 P.2d 188, 190 (App.1977) (defining "principal" as "chief, leading, most important or considerable; primary; original"), *vacated on other grounds, Ariz. Coll. of the Bible, Inc. v. Dep't of Econ. Sec.,* 120 Ariz. 217, 585 P.2d 237 (1978); *Belin v. U.S.,* 313 F.Supp. 715, 716 (M.D.Pa. 1970) (stating "[t]he word 'principal' means 'chief,' 'main,' or 'most important.' ") (citation omitted). Applying these definitions, a plain reading of § 19–101(A) indicates that, within the restrictive confines of the respective 100–word limitation, the primary and most important provisions of the resolution and ordinance must be identified in each of SOST's respective referendum petitions.

¶ 14 SOST's description of Resolution No.2008–25 stated:

Save Our Small Town seeks to refer Fountain Hills Resolution No.2008–25, an amendment to the Town of Fountain Hills General Plan 2002, to the ballot for a vote. This Resolution changes the land uses on approximately 1276 acres (formerly known as State Trust Land) being developed in the northeast corner of the Town. It would change the character of Fountain Hills and impose major impacts on existing residents. Instead, the State Trust Land should be developed in an environmentally sensitive manner and in compliance with existing hillside protection and subdivision requirements.

Additionally, the description of Ordinance No. 08–12 stated:

Save Our Small Town seeks to refer Fountain Hills Ordinance No. 08–12, amending the Official Zoning Map of the Town of Fountain Hills, to the ballot for a vote. This Ordinance changes the zoning of 50

454

parcels for approximately 1276 acres (formerly known as State Trust Land) being developed in the northeast corner of the Town. It would change the character of Fountain Hills and impose major impacts on existing residents. Instead, the State Trust Land should be developed in an environmentally sensitive manner and in compliance with our existing hillside protection and subdivision requirements.

¶ 15 Citing some of the cases briefly discussed above, SOST argues that the superior court should have broadly construed the description requirement of § 19–101(A), and found the descriptions provided to be acceptable. SOST also contends, in part, that its only obligation was to provide a copy of the subject legislation itself, citing the supreme court's opinion in *Sherrill.* At issue in *Sherrill* was a statute, A.R.S. § 19–121(E), that specifically required three items to be attached to referendum petitions involving zoning issues. Our supreme court stated that "[the] statute on its face require[d] no less and no more [be attached]." *Sherrill,* 189 Ariz. at 540, 943 P.2d at 1218. Extending this analysis to § 19–101(A), however, would ignore the explicit requirement found in that statute that a description of the principal provisions be included. As noted above, our principles of statutory construction do not allow such an approach, and we reject SOST's suggestion in that regard.

¶ 16 In the alternative, SOST argues that Sklar cannot mandate or otherwise control which provision of the subject acts is described in the petitions.[6] Further, applying principles of broad statutory construction, SOST contends the language utilized in the

petition descriptions was acceptable. We disagree.

¶ 17 The superior court did not err in strictly construing SOST's compliance with § 19–101(A). *Western Devcor, Inc.; Riffel, supra.* Were we to adopt the relaxed standard urged by SOST, application of a broader standard would not further the clear legislative goal of providing petition signers with more or even adequate information. The purpose of the statute is to ensure that the public has immediate and full disclosure of the exact public action that may be reversed. *See Cottonwood Dev.,* 134 Ariz. at 49, 653 P.2d at 697. The provisions of § 19–101(A) "obviously serve to ensure that petition signers are informed about the document they are signing and the measure being referred." *Riffel,* 213 Ariz. at 250, ¶ 13, 141 P.3d at 425. Here, the descriptions provided by SOST in the petitions merely describe the purported anticipated effect of the provisions, and fail to identify in any meaningful way any of the provisions of the challenged governmental acts, let alone the principal ones. We find SOST's descriptions were, at most, "uninformative" and "unhelpful." *See Lawrence,* 199 Ariz. at 452, ¶ 14, 18 P.3d at 1251.

¶ 18 In short, SOST's descriptions contain subjective opinions that do not describe any of the principal provisions. We accept for purposes of this appeal SOST's representations that its subjective opinions have factual support and do not reach the level of fraud; however, a referendum petition is not the appropriate place for the expression of such opinions. This type of partisan positioning should not begin until after a referendum is placed on the ballot.[7]

6. Sklar argued below and the superior court found that "[n]ot stating that the amendment and the ordinance actually reduce the density of the land use makes the descriptions materially misleading." The superior court also expressed concern that signers might have the mistaken impression that objecting to the rezoning by signing the referendum petition may prevent development of the land. In that regard, the superior court noted that SOST's petitions expressly failed to mention that the land was previously approved to be developed with a maximum density of 1,750 dwelling units. On appeal, SOST argues that it was not required to describe the reduction in density for the subject parcel, argu-

ing that such "downsizing" was only "illusory." In light of our resolution of the central issue on appeal, we need not further address this argument or the superior court's finding in this regard.

7. Indeed, as recently reaffirmed by our supreme court in *Wilhelm v. Brewer,* 219 Ariz. 45, 192 P.3d 404 (2008), descriptors of ballot measures that contain "highly inflammatory language calculated to incite partisan rage" are to be avoided. *Id.* at 48, ¶ 15, 192 P.3d at 407 (quoting *Kromko v. Superior Court,* 168 Ariz. 51, 59, 811 P.2d 12, 20 (1991)).

¶ 19 SOST also contends that its descriptions were not misleading. Specifically, it argues that a petition does not need to describe "every aspect" of a proposal, citing *Kromko*, 168 Ariz. at 60, 811 P.2d at 21. However, *Kromko* dealt with the legality of extraneous slogans on a proposed initiative petition. As previously noted, it is clear that courts treat initiatives and referenda differently: While the initiative power allows qualified electors to initiate and submit legislation to the voters, the referendum power is an "extraordinary power of a minority to temporarily suspend the actions of representatives chosen by the majority." *Cottonwood Dev.*, 134 Ariz. at 48–49, 653 P.2d at 696–97.

¶ 20 Further, we do not believe that *Kromko* prevents us from finding that these descriptions are misleading. In *Kromko*, our supreme court found that the short titles utilized in the subject initiative petition accurately described at least one major aspect of the proposition. 168 Ariz. at 60, 811 P.2d at 21. Here, the petition descriptions employed by SOST do not substantially describe *any* provision of the measure to be referred.

¶ 21 Like the supreme court in *Kromko*, we too are mindful of the task faced by petition proponents and circulators, and we recognize that "few differences exist between the descriptive, oral 'one-liner' a circulator may say to an elector passing by and the descriptive slogan printed on a petition signature sheet." *Id.* 168 Ariz. at 60, 811 P.2d at 21. Nevertheless, there are differences between the two. The insertion of "catchword phrases ... to call attention to their specific cause" is not appropriate in a referendum petition's statutorily required description of the measure sought to be referred. *See id.*

¶ 22 SOST correctly states that it does not have to identify every provision in its 100–word description; indeed, § 19–101(A) requires the petition to provide notice to prospective signers that the description does not include every provision in the measure. However, this does not excuse SOST from failing to substantively describe *any* of the

material provisions of the measures. Concluding that SOST's petitions comply with § 19–101(A) would "open the process to misleading information and even to mudslinging and partisan tactics." *Kromko*, 168 Ariz. at 59, 811 P.2d at 20 (quoting *Haugland v. Meier*, 335 N.W.2d 809, 811 (N.D.1983); *Lips v. Meier*, 336 N.W.2d 346, 347 (N.D.1983)). Accordingly, we affirm the superior court's judgment.[8]

## Attorneys' Fees Request

¶ 23 Sklar requests attorneys' fees and costs pursuant to Rules 21(c) and 25 of the Arizona Rules of Civil Appellate Procedure, and A.R.S. §§ 12–341 (2003) and 12–349 (2003). Rule 21(c) of the Arizona Rules of Civil Appellate Procedure does not provide a substantive basis for costs and attorneys' fees. Rule 25 of the Arizona Rules of Civil Appellate Procedure provides for sanctions when an appeal "is frivolous or taken solely for the purpose of delay," and A.R.S. § 12–349 provides for costs and attorneys' fees when a claim is brought without substantial justification or for delay or harassment. We conclude that this appeal was not frivolous or otherwise unjustified and therefore deny recovery of costs and attorneys' fees based on these grounds. However, pursuant to A.R.S. § 12–341, we grant Sklar's costs incurred on appeal, upon her compliance with Rule 21 of the Arizona Rule of Civil Appellate Procedure. *See Davis v. Agua Sierra Resources, L.L.C.*, 217 Ariz. 386, 397, ¶ 46, 174 P.3d 298, 309 (App.2008).

CONCURRING: PHILIP HALL, Judge, and ANN A. SCOTT TIMMER, Chief Judge.

---

8. Although the parties raise additional arguments concerning the superior court's ruling, we also need not address these arguments based on our resolution of this matter on the above-described grounds.