985 P.2d 622

**GROSVENOR HOLDINGS L.C.,**
**Plaintiff–Appellee,**

v.

**CITY OF PEORIA, an Arizona municipal corporation, acting by and through its City Council; Mayor John C. Keegen, Vice–Mayor Ella Makula, Councilmen Joseph La Rue and Kenneth Forgia, and Councilwomen Rebekah Coty, Hortencia Gutierrez, and Patricia Dennis as members of and constituting the City Council of the City of Peoria; Jan Graziano, in her capacity as Peoria City Clerk; Terry Ellis in his official capacity as Peoria City Manager, Defendants–Appellants,**

**Colleen Campbell and J.D. Campbell, individually and husband and wife, and acting on behalf of Peoria Citizens for Responsible Development, Real Parties in Interest.**

**No. 1 CA–CV 98–0472.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 28, 1999.

Review Denied Sept. 21, 1999.

City of Peoria, Office of the City Attorney by Stephen M. Kemp and Cheryl A. Boswell, Peoria, for Defendant–Appellants.

Fennemore Craig, P.C. by Graeme Hancock and William S. Gates, Phoenix, for Plaintiff–Appellee.

Sacks Tierney P.A. by Andrew L. de Mars and Brian de Vallance, Phoenix, for Real Parties in Interest.

## OPINION

NOYES, Judge.

¶ 1 The trial court granted summary judgment to Grosvenor Holdings L.C. ("Appellee") on its claim that a referendum petition filed by Peoria Citizens for Responsible Development ("Peoria Citizens") was untimely. Peoria Citizens and the City of Peoria and its City Council ("the City") appealed. We affirm.

## I.

¶ 2 In October 1996, Appellee requested that the City rezone about 71 acres of land from Suburban Ranch to Single Family Residential. On January 14, 1997, the request came to a public hearing in an auditorium full of interested citizens. The proposed development was discussed and debated in detail. Many more citizens spoke in opposition to the rezoning request than in favor of it, and the City's Planning and Zoning Commission decided against the rezoning request. By a four to two vote, however, the City Council overruled the Planning and Zoning Commission, approved the rezoning request, included "stipulations A–F as outlined in the Staff report," and directed staff to prepare the written ordinance.

¶ 3 On January 21, the Council approved the minutes of the January 14 meeting. On February 4, the Council, with no discussion, passed and adopted the corresponding ordinance after it was read by the following title and number only: "Ordinance No. 97–06: An ordinance of the City of Peoria, Maricopa County, Arizona conditionally rezoning property from suburban ranch (SR–43) to single-family residential (R1–18) zoning district; amending the zoning map and providing for an effective date."

¶ 4 On February 6, Peoria Citizens obtained a referendum petition number and circulated petitions to obtain the necessary signatures to refer the ordinance to the voters. A copy of the ordinance was attached to the petitions. On March 5, Peoria Citizens filed the petitions with the City Clerk, who, on March 27, 1997, verified that enough qualified electors had signed the petitions to call for a referendum election. There then ensued a year of inactivity, for reasons not reflected in the record. On April 21, 1998, the City Council voted to place the referendum on the ballot for a special election on September 8, 1998.

¶ 5 Appellee filed a complaint in superior court on May 1, 1998, requesting a declaration that the referendum petition was invalid because it was filed after the thirty-day time limit, and an injunction prohibiting the City Clerk from printing the referendum petition on the ballots for the upcoming election. Af-

ter briefing and argument, the court granted summary judgment to Appellee. The court found that the January 14 vote to approve the rezoning request was a legislative act, that the ordinance was "merely administrative in nature," that the thirty-day time limit began to run on January 21 (when the January 14 minutes were approved), and that the referendum petition was untimely because it was filed on March 5. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) (1992) and 19–122(C) (Supp.1998).

## II.

¶ 6 This case involves application of law to undisputed facts; our review, therefore, is *de novo*. *See Voland v. Farmers Ins. Co.*, 189 Ariz. 448, 450–51, 943 P.2d 808, 810–11 (App.1997).

¶ 7 The Arizona Constitution allows a referendum on any legislative act. *See* ARIZ. CONST. art. 4, pt. 1, § 1(8). A referendum petition must be filed with the City Clerk within thirty days after passage of the "ordinance, resolution or franchise" being referred. *See* A.R.S. § 19–142(A) (Supp.1998). The key inquiry in this and related cases is to find the referable act: Was it the approval of the rezoning request or was it the adoption of the rezoning ordinance? In answering that question here, we see no way around *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 811 P.2d 22 (1991). There, the supreme court held that conditional approval of a rezoning request was a legislative act, that subsequent adoption of a rezoning ordinance would be an administrative act, and that the right of referendum was triggered by approval of the minutes of the meeting at which the rezoning decision was made. *See id.* at 65, 811 P.2d at 26. The present case involves the same essential facts as *Pioneer Trust*: conditional approval of a rezoning request, approval of the minutes at which the rezoning decision was made, and subsequent adoption of a rezoning ordinance. Although the ordinance in the present case was adopted soon after the minutes were approved, and the ordinance in *Pioneer Trust* would be

adopted at some unknown date in the future, *Pioneer Trust* held that approval of the minutes was the legislative act, and so the same must be true here. To distinguish cases like the present one from the holding of *Pioneer Trust* requires legislation, or revision of *Pioneer Trust*, and we can do neither. We also acknowledge that, although Arizona has strong public policy favoring both initiatives and referenda, the supreme court has made clear that, "In cases challenging compliance with constitutional and statutory requirements, however, we ... permit substantial compliance in the initiative context, but require strict compliance in the referendum context." *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991) (citations omitted).

¶ 8 We turn now to the arguments. The City argues that the January 14 rezoning decision was the "initial step of the approval process" and the February 4 adoption of the ordinance was the "final step in the legislative process." The trial court rejected this argument; it found that the case was controlled by *Pioneer Trust* and by *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 491, 821 P.2d 146, 152 (1991), which held that an action becomes subject to a referendum when it is a final decision that circumscribes the freedom of the legislative body. We find no fault with the trial court's analysis. We agree that, for all practical purposes, the rezoning decision was made on January 14, even though some administrative details were to be completed later. Because the approved minutes of the January 14 decision were available on January 21, the thirty days began to run then, which meant that the petitions were untimely when filed on March 5.

¶ 9 The City and Peoria Citizens argue that the January 14 minutes were insufficient to comply with the constitutional requirement that a "full and correct copy of the title and text of the measure" be attached to the referendum petitions. *See* ARIZ. CONST. art. 4, pt. 1, § 1(9). They claim that the minutes do not accurately reflect the Council's action because stipulations A–F (which were actually provided by the developer) were referred to without specification in the minutes and because the approved ordinance contained some additional stipulations.

¶ 10 The argument that the minutes were insufficient without the developer's stipulations is essentially the same argument that was rejected in *Sherrill v. City of Peoria*, 189 Ariz. 537, 540, 943 P.2d 1215, 1218 (1997), which approved referendum petitions that did not include the guidelines for the proposed development. *See id.* at 538–39, 943 P.2d at 1216–17. The supreme court found that requiring the guidelines to be attached to the petitions improperly "amplified the scope of § 19–121(E) by announcing an additional requirement that supplemental documentation be attached to the petition." *Id.* at 539, 943 P.2d at 1217. The stipulations here are like the guidelines that *Sherrill* held did not need to be attached to the petitions there.

¶ 11 Stipulations A–F in the minutes became Conditions A–F in the ordinance, and Conditions G and H in the ordinance began as oral promises by the developer at the January 14 meeting. The stipulations-conditions were as follows:

A. Stucco, brick, stone, or masonry type materials on all four (4) sides. Other materials may be approved by the City of Peoria.

B. Ground mounted air conditioning units.

C. Minimum fully enclosed two (2) car garages.

D. Clay tile, concrete tile, slate or other roofing materials as may be approved by the City of Peoria. Wood shake shingles and asphalt shingles are prohibited. "Built-up" flat roofs may be constructed provided that there is a minimum of twelve (12') parapet to screen roofing materials from view.

E. Use of stucco "popouts," precast concrete, or other architectural elements around windows facing the front of the lot.

F. Density shall be limited to 126 units.

G. That all lots in the proposed development fronting on Calle Lejos shall be a minimum of 145 feet in width and all lots fronting Calle Lejos shall be a

minimum of 27,000 square feet, and all lots fronting Calle Lejos shall have a minimum side yard set backs of 25 feet.

H.  That the developer will pave the half streets surrounding its project, and, with respect to the half street at Calle Lejos, that the paving will extend six feet north of the center line of Calle Lejos (into the "other half" of the street) provided that the right of way is available to the City.

¶ 12 Of stipulations A–F, the only material one is F, which concerns lot density. This issue is covered in the January 14 minutes, which reflect that Appellee's attorney stated, "This project would have a maximum of 126 homes, which would average out to approximately 1.77 units per acre." (Stipulation F originally provided for 130 units. By the time of the meeting, however, the developer had reduced its request to 126 units.)

¶ 13 Peoria Citizens argues that the January 14 minutes are insufficient because conditions G and H were not included in stipulations A–F. Conditions G and H are, however, reflected in the January 14 minutes, as follows: "[Appellee's attorney] explained that the lots fronting Calle Lejos will be a minimum of 145 feet in width, will be a minimum of 27,000 square feet, and will have a minimum side-yard set back of 25 feet.... In addition to paving of streets, the developer will provide the infrastructure necessary to service the development." The minutes also reflect that the attorney stated, "[T]he developer will pave streets within the subdivision, and on all surrounding sides."

■ ¶ 14 Because conditions A–E are minor details and conditions F, G, and H are reflected in the January 14 minutes, we conclude that attaching the approved minutes to the referendum petitions would meet all applicable constitutional and statutory requirements, and we therefore reject the argument that only the ordinance would suffice. When, as here, approved minutes pre-exist an adopted ordinance and reflect the action taken by the legislative body, *Pioneer Trust* provides that the decision reflected in the minutes is the referable act, and section 19–121(E) provides that those minutes are to be attached to the referendum petitions. The law might be better if it allowed some flexibility when the ordinance is adopted shortly before or after the minutes are approved, but the present law is dualistic and inflexible on this point; it requires an answer to this either-or question: Was the legislative body's referable act its approval of the rezoning request or its adoption of the rezoning ordinance?

¶ 15 We do not like the "heads we win, tails you lose" advantage referendum opponents now enjoy because of the ordinance-or-minutes dualism we perpetuate with this opinion. On facts such as exist here, if the referendum proponents act on the approved minutes, adversaries can argue, as the dissent does here, that the proponents should have acted on the adopted ordinance. If the proponents act on the adopted ordinance, adversaries can argue, as they do here, that the proponents should have acted on the approved minutes. Both sides of the question are fairly debatable in a case like this one. But because the present rules are bright line ones that are to be strictly applied, we cannot fault the referendum opponents for taking advantage of those rules, and we will not reverse the trial court for applying those rules.

### III.

■ ¶ 16 Peoria Citizens also argues that the complaint should be dismissed on grounds of waiver and laches because it was filed more than one year after verification of the signatures on the petition. The doctrine of laches has recently been applied in one election case, *Mathieu v. Mahoney,* 174 Ariz. 456, 851 P.2d 81 (1993), and rejected in another, *Kromko v. Superior Court,* 168 Ariz. 51, 811 P.2d 12 (1991). Those cases turned on the timing of the complaint in relation to the election. The complaint in *Kromko* was timely because it was filed a month and a half before absentee voting began. 168 Ariz. at 57, 811 P.2d at 18. The complaint in *Mathieu* was untimely because it was filed fifteen days before absentee voting began, the trial was held one day after the complaint was served, and defendants' ability to pre-

pare a defense was prejudiced by this timing. 174 Ariz. at 459, 851 P.2d at 84.

¶ 17 In this case, the May complaint was filed well before the scheduled September election, and the trial court, with reason, found that Peoria Citizens had "ample time ... to mount their defense and present their case to the court." We find no abuse of discretion in the trial court's conclusion that laches should not be applied.

### IV.

¶ 18 The judgment is in all respects affirmed.

JON W. THOMPSON, Presiding Judge, concurs.

LANKFORD, Judge, Dissenting.

¶ 19 I respectfully dissent. Under the circumstances of this case, the referable act was the adoption of the ordinance, not the city council's earlier action. As a result, the petition was timely.

¶ 20 By statute, a petition for referendum from municipal action must be filed within 30 days of the adoption of the ordinance or resolution. A.R.S. § 19–142(A). At the time of filing an application, see section 19–111 (Supp.1998), the applicant must submit to the clerk a "full and correct copy of the ordinance or resolution in the form as finally adopted." A.R.S. § 19–142(C). If a copy of the ordinance or resolution is not available at this time, the 30–day period for filing a petition is extended until it is available. *Id.* The purpose of this requirement is, in part, to identify the written material to be supplied to the voters. *See* A.R.S. § 19–123(A)(1).

¶ 21 By statute, the city council's minutes may also be attached:

[T]he measure to be attached to the petition ... means the adopted ordinance or resolution or, in the absence of a written ordinance or resolution, that portion of the minutes of the legislative body that reflects the action taken by that body when adopting the measure. In the case of zoning measures the measure shall also include a legal description of the property and any amendments made to the ordinance by the legislative body.

A.R.S. § 19–121(E). *See also Simpson v. Committee Against Unconstitutional Takings, L.L.C.,* 193 Ariz. 391, 972 P.2d 1027 (App.1998).

¶ 22 In this case, it was not possible for the "measure" to be attached in the form of minutes. That is simply because the minutes did not accurately and fully reflect the action actually taken by the city council.

¶ 23 Although adoption of the zoning ordinance is often only a mere formality, in this case the ordinance differed from the action earlier taken. Only the ordinance fully and correctly reflected the legislative act. Thus, the time to file the petition did not commence until the ordinance was adopted, and accordingly the petition was timely filed.

¶ 24 The minutes do not suffice. First, they incorrectly reflected that "stipulations A–F as outlined in the Staff report" were adopted as part of the rezoning. In fact, it appears that there were no staff stipulations. The document that contains provisions A–F is a proposal by the developer.

¶ 25 Even if this error could be overlooked, the written stipulations and the minutes conflict. Thus, it is not possible for the minutes to have correctly reflected the action taken. For example, the stipulations provide a density limit of 130 units; the minutes indicate that the limit is 126 units. To make matters worse, the minutes and the ordinance also conflict. The minutes indicate that the developer would pave surrounding streets; the ordinance only that it would pave half streets. The minutes refer to the developer's promise to pay for water and sewer service connections; the ordinance contains no such stipulation. The minutes stipulate that the developer pave streets within the subdivision; the ordinance is silent on that matter.

¶ 26 The time to file a referendum application does not start until the petitioner can provide a copy of the legislative act that is challenged. This is a point emphasized by our supreme court in *Pioneer Trust,* 168 Ariz. at 61, 811 P.2d at 22. In that case, the court noted that a full and correct copy of the

minutes was not available at the time alleged by the property owner. 168 Ariz. at 68, 811 P.2d at 29. A transcript of the meeting would not suffice, in part because "the first twenty-four conditions of the rezoning were not even verbally recited at the . . . meeting. Thus, the Challengers also would have had to obtain a staff report that contained the first twenty-four conditions." *Id.* at 69, 811 P.2d at 30. The time to file did not start until the city clerk could provide a "full and correct copy" of the minutes. *Id.* at 68, 811 P.2d at 29. Similarly, in *Cottonwood Dev. v. Foothills Area Coalition,* 134 Ariz. 46, 50, 653 P.2d 694, 698 (1982), the court said: "The 'precise language' of the particular resolution is the measure to be referred."

¶ 27 The majority rejects the idea that these differences prevented the earlier action from constituting the referable act. Relying on *Sherrill v. City of Peoria,* it concludes that it was not necessary that the stipulations be attached. 189 Ariz. at 537, 943 P.2d at 1215. For several reasons, I cannot agree with the majority's position.

¶ 28 First, *Sherrill* is both factually and legally distinguishable. *Sherrill* involved a report referred to in the ordinance. This case involves stipulations that were part of the legislative act itself. The stipulations were incorporated by reference in the minutes and were part of the ordinance.

¶ 29 Second, the majority's approach is 180 degrees from that adopted by the supreme court in *Sherrill* and other cases. The majority proposes to reject the attempt to refer the zoning measure. In contrast, the supreme court has consistently emphasized the importance of the referendum power and sought to avoid its frustration by confusing technicalities. *Sherrill* upheld a referendum; it did not bar it. It reached the same result in *Pioneer Trust.* The court's comment in the latter case is instructive: "[Referendum] is a case of legislative review by the people, an action that the Arizona Constitution and statutes strongly encourage." 168 Ariz. at 66, 811 P.2d at 27. The policy of the courts is to permit rather than frustrate this power—as it should be.

¶ 30 The majority also argues that because the material stipulations were covered in the minutes, the minutes suffice. This overlooks the inconsistency among the stipulations, minutes and ordinance that is detailed above. The predicament for petitioners is that they cannot comply with the statutory requirement that a "full and correct copy" of the measure be provided with a copy of minutes that conflict with the ordinance, which is the definitive legislative act. In short, the rule I would uphold is that the minutes do not suffice when they are inaccurate and incomplete.

¶ 31 In my view, the majority's position also conflicts with the stated policy of our supreme court favoring "a bright-line rule easily ascertainable by all interested parties." *Id.* In the present situation, the bright-line should be this: Earlier action by a municipal legislative body is not referable when the minutes fail to fully and accurately reflect its action. That is, when the ordinance actually rezoning the property differs from the minutes, the ordinance is the referable act.

¶ 32 The majority's position creates a substantial hurdle for the expression of the popular will. By requiring that the referendum process be commenced before the exact nature of the municipality's action is known, the majority requires that electors decide whether to support referendum even before the act to be referred can be precisely ascertained. As the majority itself concedes, it supports a "heads we win, tails you lose" interpretation of the law.

¶ 33 I recognize that in *Pioneer Trust,* our supreme court was concerned that difficulties would be created if enactment of the ordinance were the referable act. *Id.* The court feared that challengers would be forced "to make repeated checks to determine whether the Board has enacted the final zoning ordinance." *Id.* However, my approach does not create that problem. Assuming that *Pioneer Trust* means that the initial act evidenced only by minutes is referable, see *Simpson,* 193 Ariz. at 394, 972 P.2d at 1030,[1] that would still be the case when the minutes and ordinance are consistent. However, the challengers would not be held to a deadline

1. To the extent that *Simpson* stands for the proposition that even when an ordinance omits zoning stipulations contained in the minutes it nevertheless constitutes the referable act, I disagree.

fixed by the initial act in those instances in which the later enacted ordinance differed. That lessens the burden upon challengers rather than increases it, and supports the referendum power rather than frustrates it.

¶ 34 The majority also contends that its interpretation upholds the rule of strict compliance. On the contrary, my interpretation requires strict compliance with the requirement that an accurate copy of the measure be available. In my view, it is the majority which takes liberty with this requirement by recognizing inaccurate and incomplete minutes as sufficient.

¶ 35 I do not find other Arizona cases particularly enlightening. *Wennerstrom v. City of Mesa,* for example, held that a bond election was the act that authorized a street improvement project; subsequent municipal resolutions regarding the project were administrative and not thus not referable because they carried out the previous legislative authorization. 169 Ariz. at 491, 821 P.2d at 152.

¶ 36 Accordingly, the trial court erred in granting summary judgment to Appellee Grosvernor in its special action to bar the referendum. I would reverse that judgment and allow the people to express their will.

The electors are entitled to exercise their rights based on full knowledge of the challenged legislative action.